691 So.2d 629 (1997)
Gregory WILKS, Appellant,
v.
BOSTON WHALER, INC., et al., Appellees.
No. 96-975.
District Court of Appeal of Florida, Fifth District.
April 18, 1997.
Frederick C. Morello, P.A., Daytona Beach, for Appellant.
Joshua D. Lerner and Scott M. Sarason of Rumberger, Kirk & Caldwell, a Professional Association, Miami, for Appellees.
PETERSON, Chief Judge.
Gregory Wilks, an employee of Boston Whaler, Inc. (Boston Whaler), appeals a summary judgment determining that Boston Whaler was not culpably negligent for respiratory injuries he incurred while working as a mixer/pourer during an operation called "foaming," a process in which chemicals are used in manufacturing boats. The trial court entered summary judgment against Wilks, indicating orally that Wilks had earlier released Boston Whaler from liability through a workers' compensation stipulation and that, moreover, he had failed to show that Boston Whaler had acted with culpable negligence, that degree of negligence required to permit a tort claim where workers' compensation already provides a remedy. Because we agree with the trial court that Wilks failed to show culpable negligence on the part of Boston Whaler, it is unnecessary to evaluate whether the stipulation also bars recovery by Wilks.
Wilks' job as a mixer/pourer required the handling of chemicals, including toluene diisocyante (TDI). Through pre-trial discovery, it was revealed that Boston Whaler had established a safety program that required all employees to participate in an eight-hour safety training in which precautions and hazards associated with chemicals used at the plant were explained. Annually, each employee received training in the proper use of his or her respirator. During the respirator fit test, each employee received instruction on how to properly wear, test, maintain, clean and store the respirator. The test was conducted in a one-on-one session between each employee and Boston Whaler's occupational nurse. "Right to Know" seminars *630 were also conducted in which information was given regarding the chemicals used at the facility and the precautions that were to be taken when dealing with such hazardous material. The company's nurse also asserted that a Material Safety Data Sheet for each chemical used on the premises was available for any employee to read. Additionally, a Boston Whaler official asserted in an affidavit that any buckets containing TDI were marked with the letter "T," that everyone knew that the "T" referred to TDI, and that the chemical was hazardous and could cause a breathing problem. Wilks admitted that he attended three safety training sessions and three "Right to Know" sessions. Wilks further admitted that on three occasions a Boston Whaler representative had explained respiratory hazards and the proper maintenance and stowing of his respirator. He also admitted that he was instructed to wear his respirator when working with or around TDI.
After having worked for Boston Whaler for three years, Wilks suddenly became ill and had difficulty breathing in June, 1990. He drove to a hospital where oxygen was administered. He was told he had fluid in his lungs and he was instructed to take off a week from work. Subsequently, he suffered two similar attacks at six month intervals. When questioned by his physician about the chemicals he used at work, Wilks asked his Boston Whaler supervisor about the chemicals and was given an information sheet on styrene and TDI. In November 1991, Wilks resigned from Boston Whaler upon the advice of his physician and upon learning that he had bronchial asthma due to TDI exposure. Shortly after signing the workers' compensation stipulation, Wilks brought the instant suit in June of 1994. In November of 1995, Boston Whaler filed its motion for summary judgment.
Boston Whaler's motion for summary judgment was accompanied by the above facts and the assertion of its belief that the respirators that it issues to its employees were sufficient. It based its belief on the results of a study performed by Boston Whaler's workers' compensation insurer before Wilks' injury which indicated that air-supplied respirators were not necessary to ensure the safety of production department employees.
Wilks filed an affidavit in opposition to the summary judgment motion in which he alleged the following: He and other employees who experienced breathing problems after being exposed to TDI, "had not been informed about the possible exposure to and dangers of TDI." He first discovered and read the warning labels given by the manufacturer of TDI after he quit. Boston Whaler, prior to Wilks quitting, never gave him a copy of the Material Safety Data Sheet on TDI nor had the chemical ever been mentioned in any of the safety meetings he attended. The only warning given was that he should wear goggles, gloves and a cartridge respirator "because the chemical would release freon." Wilks also referred to a July 1991 report of an industrial hygienist hired by Boston Whaler's insurer. The hygienist determined that the mixer/pourer position (occupied at times by Wilks) exposed the operator to up to three times more TDI than other employees and recommended that the mixer/pourer be provided with an air-supplied respirator rather than just a cartridge respirator. The hygienist also found certain problems with Boston Whaler's ventilation system and recommended that all containers of TDI be clearly marked with appropriate warning labels.
Workers' compensation is the exclusive remedy available to an employee injured by his employer's negligence. Eller v. Shova, 630 So.2d 537, 539 (Fla.1993). Section 440.09(1), Florida Statutes (1995), provides for the payment of compensation benefits whenever disability or death results from an injury arising out of and in the course of employment. Fisher v. Shenandoah General Construction Co., 498 So.2d 882 (Fla.1986). In Fisher, an employee, in a tort claim against his employer, alleged that the employer had ordered him to enter and clean pipes that the employer knew contained noxious fumes which would, "in all probability," cause injury or death. Id. at 883. The district court, affirming summary judgment in favor of the employer on the employee's tort claim, certified to the supreme court the *631 question of whether employers covered by workers compensation were immune from suits for intentional torts. The majority of the supreme court held that the complaint properly had been dismissed because the plaintiff had alleged merely that, "in all probability," the employer's order to enter the pipe would cause injury or death. The court found, "[i]n order for an employer's action to amount to an intentional tort, the employer must either exhibit a deliberate intent to injure, or engage in conduct which is substantially certain to result in injury or death." Id. at 883.
In the instant case, Wilks asserts that he has demonstrated that Boston Whaler's conduct was such that it was substantially certain that injury or death would occur to him or other similarly situated employees. The facts drawn most favorably to Wilks' position indicate: Wilks was not provided with a copy of the Material Safety Data Sheet on TDI and he was not given a copy of the warning label on TDI packaging. Boston Whaler continued to have its employees use cartridge-style respirators even after the industrial hygienist hired by Boston Whaler's insurer had recommended that those in a mixer/pourer position such as Wilks be outfitted with an air-supplied respirator. The industrial hygienist's report, made in July of 1991 at approximately the time of Wilks' third attack, was not revealed to Wilks.
The hygienist's report, which really forms the underlying basis for Wilks' allegations of culpable negligence or an intentional tort on the part of Boston Whaler, is little more than a series of recommendations for better health safety practices which could reduce overall employee health costs for Boston Whaler. Neither from the report, nor from any other part of the record, can it be inferred in any way that the failure to provide an air-supplied respirator, rather than a cartridge respirator, or the failure to provide Wilks a copy of the Material Safety Data Sheet on TDI, constituted conduct substantially certain to result in Wilks' injury or death. The safety program that Boston Whaler had in effect during the time of Wilks' employment further belies any indication that Boston Whaler had a deliberate intent to engage in conduct which, almost with certainty, would cause injury or death to its employee.
In Fisher, the supreme court wrote:
In order for an employer's actions to amount to an intentional tort, the employer must either exhibit a deliberate intent to injure or engage in conduct which is substantially certain to result in injury or death.... A strong probability is different from substantial certainty and cannot constitute intentional wrongdoing.
Fisher v. Shenandoah General Construction Co., 498 So.2d 882, 883 (Fla.1986). Workers' compensation is an employee's only remedy where the employer is guilty only of negligence or even gross negligence. Lawton v. Alpine Engineered Products, Inc., 498 So.2d 879 (Fla.1986). In the instant case, there is no evidence that the employer was culpably negligent or deliberately intended to harm Wilks. The evidence shows only that the employer could have engaged in safer practices than it did. The evidence shows Boston Whaler had a safety program in effect in which Wilks understood that he needed to wear his respirator when working around TDI. Wilks, further, admitted that he attended three company safety sessions in which a representative of Boston Whaler explained respiratory hazards to him, and instructed him on the proper method of cleaning, inspecting, and storing his respirator. Cf. Connelly v. Arrow Air, Inc., 568 So.2d 448 (Fla. 3d DCA 1990), rev. denied, 581 So.2d 1307 (Fla.1991) (action allowed to proceed where the survivor of a deceased pilot alleged that the employer misstated the plane's maximum weight capacity to avoid losing a lucrative contract, violated FAA regulations by requiring excessive pilot flight hours, ignored warnings about necessary repairs, routinely overloaded the plane resulting in drastically reduced performance, intentionally refused to provide maintenance and equipment while knowing that the plane was on the verge of a catastrophic breakdown, and intentionally failed to inform the crew of a mechanical defect discovered during the preceding flight); Cunningham v. Anchor Hocking Corp., 558 So.2d 93 (Fla. 1st DCA 1990), rev. denied, 574 So.2d 139 (Fla. 1990) (action permitted to proceed where the employees alleged that the employer deliberately *632 diverted a smokestack so that noxious fumes and toxic substances flowed into the factory, rather than to the outside, periodically turned off the factory ventilation system which increased the toxicity, removed manufacturers' warning labels from toxic substance containers, knowingly provided inadequate safety equipment, and lied about the danger and the need for safety equipment).
The mixing containers used for TDI did not have warning labels on them, but there is no suggestion in the record that this was a deliberate attempt by Boston Whaler to hide the dangers of TDI. Wilks was aware of the need to wear a respirator while working around TDI. Boston Whaler may have done more to reduce the risk of injury from exposure to TDI, but doing more in terms of employing better methods to avoid worker injury, and intentionally creating a situation which is substantially certain to cause injury, is not the same.
In sum, Boston Whaler's failure to insure that its employees exposed to the greatest amounts of TDI used the hygienist-recommended air-supplied respirators rather than the cartridge respirators, and its failure to have all containers of TDI labeled with warnings, are not the type of intentional acts of misconduct contemplated by the supreme court in Fisher, or by the district courts in either Connelly or Cunningham, which can support an action by an employee against his employer for culpable negligence or intentionally-caused, work-related injuries.
Summary judgment was properly entered by the trial court. Although Wilks may have demonstrated that issues of fact existed that would defeat a motion for summary judgment when negligence or even gross negligence was alleged, he failed to demonstrate any remaining question of fact as to whether Boston Whaler's conduct was substantially certain to result in his injury.
The summary judgment is
AFFIRMED.
GOSHORN and HARRIS, JJ., concur.