961 So.2d 259 (2007)
Martin BAKERMAN, Petitioner,
v.
THE BOMBAY COMPANY, INC., et al., Respondents.
No. SCO5-358.
Supreme Court of Florida.
June 21, 2007.
*260 Barbara Green, Miami, FL, and Robert N. Pelier, Coral Gables, FL, for Petitioner.
Robert E. Biasotti of Carlton Fields, P.A., St. Petersburg, FL, and Christine R. Davis of Carlton Fields, P.A., Tallahassee, FL, for Respondent.
Valerie A. Fernandez and Steven G. Gieseler, on behalf of Pacific Legal Foundation, Coral Gables, FL, as Amicus Curiae.
QUINCE, J.
We have for review Bombay Co. v. Bakerman, 891 So.2d 555 (Fla. 3d DCA 2004), which expressly and directly conflicts with the decision of this Court in Turner v. PCR, Inc., 754 So.2d 683 (Fla.2000). We have jurisdiction. See art. V, § 3(b)(3), Fla. Const. For the reasons explained below, we quash the decision of the Third District in Bombay.

FACTUAL AND PROCEDURAL BACKGROUND
In September 1997, Martin Bakerman was injured in a fall from a ladder while employed at a Bombay Company retail store. Employees of the store constantly used the ladder to stock and retrieve sales merchandise from shelves in the Bombay storeroom. The storeroom in which the ladder was used was small and crowded, with shelves of merchandise extending several feet overhead. The ladder used was a wooden A-frame type that had been in use in the storeroom for a number of years. The poor condition of the ladder was apparent. It was old, wobbly, and undersized for its purpose, such that employees would have to balance on top of the ladder in order to retrieve merchandise from the uppermost shelves. Because of its bad condition, the ladder would increasingly sway from side to side when someone climbed it. The only way to stop the swaying was to hold on to the shelves with one hand while retrieving merchandise with the other hand. It was sometimes necessary, as in this instance, to stand on the top step of the ladder in order to reach customer merchandise from the upper shelves. Furthermore, the ladder's feet were not fitted with rubber traction shoes and were cut at an angle for increased stability while in the open position. However, because there was insufficient space in which to open the ladder, it was usually leaned against the shelves with its legs closed. It was estimated that the ladder was used dozens of times each day by the employees, and Bakerman himself had used it hundreds of times without incident.
Bakerman complained about the danger to his store manager, who also used the ladder. The store manager testified that she, in turn, had repeatedly complained to Bombay Company's district manager and *261 asked for a new ladder. The district manager testified that he did not recall the requests.
While at the top of the ladder trying to retrieve merchandise, Bakerman momentarily let go of the shelves and fell from the ladder. This fall pulverized the bones of Bakerman's left heel. Bakerman received workers' compensation benefits during his recovery but later sued Bombay, claiming that Bombay's actions constituted an intentional tort. At trial, Bombay asserted workers' compensation immunity in an unsuccessful motion for a directed verdict. By denying Bombay's motion for a directed verdict, the trial judge determined that the issue presented a question for the jury  whether the employer knew or should have known that its failure to replace the defective ladder was substantially certain to result in the injury or death of an employee. The jury concluded that the conduct was substantially certain to result in Bakerman's injury. As a result, the jury found Bombay sixty-seven percent liable and Bakerman thirty-three percent liable. After reduction for comparative fault, judgment was entered in favor of Bakerman for $118,228.20. Bombay appealed.
On appeal, Bombay asserted that the evidence was legally insufficient to support the verdict. On rehearing of its initial decision, the Third District reversed the trial court judgment and remanded the case for entry of judgment in favor of Bombay. The district court referred to this Court's decision in Turner v. PCR, Inc., 754 So.2d 683 (Fla.2000), to emphasize that the cases finding liability under the intentional tort exception contain "a common thread of evidence that the employer tried to cover up the danger, affording the employees no means to make a reasonable decision as to their actions." Bombay, 891 So.2d at 557 (quoting Turner, 754 So.2d at 691). Lacking any allegation of concealment of the danger and finding that the danger was evident to Bakerman, the Third District determined that the evidence was legally insufficient to support liability under the intentional tort exception to workers' compensation immunity and remanded the case for entry of judgment in favor of Bombay.[1]

ANALYSIS
The question before us is whether the substantial certainty test of the intentional tort exception to workers' compensation immunity has as an indispensable requirement that the employer conceal danger from the employee. This is a question of law subject to the de novo standard of review. See D'Angelo v. Fitzmaurice, 863 So.2d 311, 314 (Fla.2003) ("The standard of review for the pure questions of law before us is de novo."); see also Armstrong v. Harris, 773 So.2d 7, 11 (Fla.2000) ("[T]he standard of review for a pure question of law is de novo.").
Florida Workers' Compensation law sets forth a comprehensive scheme that provides disability and medical benefits to workers who are injured on the job during the course of their employment. See generally §§ 440.01-440.60, Fla. Stat. (2006). The system is "based on a mutual renunciation of common-law rights and defenses by employers and employees alike." § 440.015, Fla. Stat. (2006). Injured employees who fall within the scope of its provisions are to be swiftly provided compensation and necessary medical benefits by the employer, irrespective of fault as a cause of the injury. See §§ 440.09, 440.10(2), Fla. Stat. (2006). In exchange, *262 employers that comply with the provisions of the chapter are given immunity from civil suit by the employee, except in the most egregious circumstances. See § 440.11, Fla. Stat. (2006).
When an employer commits an intentional tort against an employee, it may be subject to civil action under a narrow exception to workers' compensation immunity. In Fisher v. Shenandoah General Construction Co., 498 So.2d 882 (Fla.1986), we held that "[i]n order for an employer's actions to amount to an intentional tort, the employer must either exhibit a deliberate intent to injure or engage in conduct which is substantially certain to result in injury or death." Id. at 883.[2] In Turner v. PCR, Inc., 754 So.2d 683 (Fla.2000), this Court reaffirmed the existence of an intentional tort exception to workers' compensation immunity, requiring an objective analysis to "measure whether the employer engaged in conduct which was substantially certain to result in injury." Id. at 691.[3] The district court in Turner affirmed the trial court's grant of summary judgment for the employer, noting that the specific type of accident that resulted in the employee's death had never before occurred at the employer's plant. Applying the substantial certainty standard, this Court quashed that decision. Although we emphasized that the employee maintains the ultimate burden of demonstrating substantial certainty to the jury, we found that there was a genuine issue of material fact produced by the experts' affidavits. "Under an objective test for the substantial certainty standard, an analysis of the circumstances in a case would be required to determine whether a reasonable person would understand that the employer's conduct was `substantially certain' to result in injury or death to the employee." Id. at 688.
*263 In the instant action, Bakerman contends that the Third District's decision conflicts with this Court's decision in Turner by adding a concealment of danger requirement to the objective substantial certainty standard. In reviewing the instant case on rehearing, the Third District acknowledged the applicable law and noted that the issue presents a jury question as to whether the employer had engaged in conduct that was substantially certain to result in injury or death. Bombay, 891 So.2d at 557. However, the Third District additionally said:
Of particular interest here, the Turner decision also points out that the cases finding liability under the intentional tort exception contain a "common thread of evidence that the employer tried to cover up the danger, affording the employees no means to make a reasonable decision as to their actions." 754 So.2d at 691 (citing Connelly v. Arrow Air, Inc., 568 So.2d 448 (Fla. 3d DCA 1990), and Cunningham v. Anchor Hocking Corp., 558 So.2d 93 (Fla. 1st DCA 1990), and Emergency One, Inc. v. Keffer, 652 So.2d 1233 (Fla. 1st DCA 1995)).
That element is missing here. Here, as in Emergency One, the dangerous condition was evident to the employee and there was no concealment of the danger. For that reason we conclude that the evidence was legally insufficient to support liability under the intentional tort exception to workers' compensation immunity. Accordingly, we reverse the judgment and remand for entry of judgment in favor of Bombay.
Bombay, 891 So.2d at 557 (emphasis added). Thus, the court in Bombay effectively held concealment to be an indispensable criterion of the substantial certainty analysis of the intentional tort exception. As a result, an employer will enjoy immunity from civil suit unless the employee can affirmatively show that there was concealment of danger by the employer.
While Turner notes the existence of concealment by the employer in some of the cases, Turner does not hold that as a matter of law concealment is a necessary element of the substantial certainty analysis. Neither Cunningham v. Anchor Hocking Corp., 558 So.2d 93 (Fla. 1st DCA 1990), nor Connelly v. Arrow Air, Inc., 568 So.2d 448 (Fla. 3d DCA 1990), which were cited in Turner, held that a concealed danger is required before an employee may recover for intentional tort. In Cunningham, which involved injuries resulting from exposure to toxic chemicals, the First District reversed the decision of the trial court and held that the allegations of the complaint were sufficient to "state a cause of action" and "should not have been dismissed." 558 So.2d at 97. The district court never suggested that concealment was a required element, but instead emphasized that "the allegations are that injury was a `substantial certainty' and that there was repeated, continued exposure that was intentionally increased and worsened by appellees' deliberate and malicious conduct." Id. The employer's misrepresentation of the danger was only one of several allegations permitting the claims of battery, fraud, and deceit to survive the employer's motion to dismiss.
Likewise, in Connelly, an action involving the crash of a DC-8 airplane, it was never suggested that an employer must conceal the dangerous condition from the employee before an action can be maintained for conduct that falls outside workers' compensation immunity. There, the Third District reversed a summary judgment in favor of the employer, finding it "quite reasonable to conclude, as a matter of law, that a passenger aircraft which is routinely overloaded and poorly maintained *264 . . . will  to a substantial certainty  eventually succumb to the incessant forces of gravity causing serious injury to, or the death of, those aboard." 568 So.2d at 451. Concealment of the danger from the employees was evidently not a factor in the court's conclusion. Having found that the objective test of substantial certainty was met without a showing of concealment, the court then stated in dicta:

Further, where the employer, as in this case, withholds from an employee, knowledge of a defect or hazard which poses a grave threat of injury so that the employee is not permitted to exercise an informed judgment whether to perform the assigned task, the employer will be considered to have acted in a "belief that harm is substantially certain to occur."
Id. (emphasis added).
Under Connelly, the added element of concealment merely provides a presumption that the action of the employer was substantially certain to result in injury to the employee. Thus, contrary to the Third District's decision in Bombay, Cunningham and Connelly stand for the proposition that concealment can be an important, but not essential, factor in the larger analysis of whether the circumstances demonstrate a substantial certainty of harm.
Even though case law on the intentional tort exception to workers' compensation immunity is devoid of any defined test that will establish substantial certainty as a matter of law, it is evident that concealment of the dangerous condition is only one of several factors in a nonexclusive list. However, in deciding the instant case, the Third District cited our decision in Turner for the proposition that concealment of the danger is a required element to a finding of liability under the intentional tort exception. Based on this proposition, the Third District concluded that the evidence was legally insufficient to support liability under the intentional tort exception to workers' compensation immunity. Although the decision in Turner noted that there have been cases that "share a common thread of evidence that the employer tried to cover up the danger, affording the employees no means to make a reasonable decision as to their actions," the decision did not ultimately conclude that concealment of the danger is a necessary requirement to satisfying the substantial certainty standard. Turner, 754 So.2d at 691. Accordingly, the Third District erred by basing its decision solely on whether the employer concealed the danger.
As the Third District stated in its decision in the instant case, "the evidence presented a jury question on whether the employer had engaged in conduct which was substantially certain to result in injury or death." Bombay, 891 So.2d at 557 (citing Turner, 754 So.2d at 687 n. 4). We agree that this was an issue for the jury to decide. At trial, the jury was instructed on what it should consider in making its decision, including the following:
Whether the Bombay Company engaged in conduct which was substantially certain to result in injury or death. The mere probability that injury or death might result from an employer's conduct is not sufficient to hold the employer liable for the accident. If however, the greater weight of the evidence does support the claim of Martin Bakerman, then you should consider the defense raised by the Bombay Company.
The court went on to inform the jury that if they found that injury was a substantial certainty, then they would have to determine if Bakerman exercised reasonable care in the use of the ladder. Based on the facts presented, the jury determined that injury was substantially certain to *265 result.[4] Thus, the issue that the district court should have determined was whether there was sufficient evidence to uphold the jury's determination that the plaintiff had demonstrated a substantial certainty that injury would result from the employer's actions or inactions. The district court instead added a new essential element to the substantial certainty test. This was error.

CONCLUSION
Based on the above, we conclude that the Third District erred in reversing the judgment based solely on the plantiff's failure to demonstrate that the employer concealed a danger. Accordingly, we quash the decision of the Third District in Bombay and remand for proceedings consistent with this opinion.
It is so ordered.
LEWIS, C.J., and ANSTEAD and PARIENTE, JJ., concur.
WELLS, J., dissents with an opinion, in which CANTERO and BELL, JJ., concur.
WELLS, J., dissenting.
I dissent. My first preference would be to discharge jurisdiction as improvidently granted. My second preference would be to approve the Third District Court of Appeal's decision in Bombay Co. v. Bakerman, 891 So.2d 555 (Fla. 3d DCA 2004).
The majority opinion holds that the Third District's decision expressly and directly conflicts with this Court's decision in Turner v. PCR, Inc., 754 So.2d 683 (Fla. 2000). In contrast, I believe that these cases can be reconciled. Moreover, I believe that we should discharge jurisdiction because any decision in this case which involves a claim by an employee against an employer for a work-related injury which occurred in 1997 will have limited application because in 2003 the Legislature superseded this Court's opinion in Turner with section 440.11(1)(b), Florida Statutes (2003). Section 440.11(1)(b) codified the intentional tort exception to the workers' compensation immunity doctrine and explicitly provided that an employer's actions shall be deemed an intentional tort where:
1. The employer deliberately intended to injure the employee; or
2. The employer engaged in conduct that the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee, and the employee was not aware of the risk because the danger was not apparent and the employer deliberately concealed or misrepresented the danger so as to prevent the employee from exercising informed judgment about whether to perform the work.
*266 (Emphasis added.) Thus, the conceptual role of employer concealment of danger in the intentional tort exception analysis will not be at issue in causes of action accruing after this amendment.
Since the majority rejects discharging this case, I write to explain my concern that the majority's decision is a radical deviation from this Court's historic recognition that the intentional tort exception to workers' compensation immunity is a limited exception which requires as a legal threshold prima facie proof of an intentional tort. In writing the Third District's opinion on rehearing, Judge Cope recognized that exceptions to workers' compensation immunity must be narrowly construed to fulfill the purpose of the act. He quoted this Court's long established precedent that the workers' compensation statute
was meant to systematically resolve nearly every workplace injury case on behalf of both the employee and the employer.
A contrary holding giving wide breadth to the rare exceptions to workers' compensation immunity would merely erode the purpose and function of the Workers' Compensation Law as established by the Legislature.
Bombay, 891 So.2d at 556-57 (quoting Taylor v. Sch. Bd. of Brevard County, 888 So.2d 1, 6 (Fla.2004)). Judge Cope's analysis is consistent with this Court's overarching point in Turner that while Florida jurisprudence includes an intentional tort exception to workers' compensation immunity, this exception must be understood in context. The workers' compensation statute was intended to provide a quick and efficient delivery of disability and medical benefits to an injured worker and is based on a mutual renunciation of common-law rights and defenses by employers and employees. Turner, 754 So.2d at 686. Thus, the intentional tort exception must not be allowed to become "a shield for employers to block intentional tort suits" or a sword for employees already compensated for their accidental injuries. Id. at 689.
I begin from the fundamental premise that our decision in Turner did not reduce the requirement that for a claim by an employee against an employer for a work-related injury to proceed to a jury determination, there must to be prima facie proof of an intentional tort. To the contrary, this Court expressly stated:
In summary, we find that our prior case law recognizes, and we reaffirm, the existence of an intentional tort exception to an employer's immunity. That intentional tort exception includes an objective standard to measure whether the employer engaged in conduct which was substantially certain to result in injury. This standard imputes intent upon employers in circumstances where injury or death is objectively "substantially certain" to occur.
Turner, 754 So.2d at 691. Turner involved the claim that "PCR, Inc. failed to protect its employees from a known danger of explosion and instead . . . engaged in conscious and intentional conduct which was substantially certain to result in injury or death." Id. at 689-90. We found that the threshold requirement of prima facie proof of an intentional tort was satisfied where the plaintiffs offered affidavits from two experts who, after noting three prior explosions at the chemical plant within the prior two years, concluded that PCR's use of a "reaction facility which they knew was unsuited" to the development of F-pentene-2 was intentional conduct that "given its knowledge of [tetrafluoroethylene's] explosiveness, made Turner's death and Creighton's injury substantially certain to occur." Id. at 690. This Court's decision overturning a summary judgment in favor *267 of the employer in Turner did not disturb and should not be read to have disturbed the long-established jurisprudence that the intentional tort exception is just that  an "exception" reserved for the rare circumstances where the facts demonstrate that the employer's conduct was so grievous that it could be objectively concluded that the employer intentionally injured the employee. In short, Turner's intentional tort exception should not be diluted into an ordinary negligence exception to workers' compensation immunity.
The present case is patently an action in which the evidence only made at most a prima facie case of ordinary negligence. The record of the proof makes this abundantly clear. This was an action based upon an employee falling from a ladder that was used to obtain merchandise from a Dadeland Mall retailer's storeroom. Prior to this accident, the ladder had been used daily for years to retrieve stock from the storeroom shelves, and there was no evidence of any prior accidents from the use of the ladder, despite evidence that the ladder would sway when it was in use. As the majority acknowledges, the claimant had used the ladder "hundreds of times without incident." Majority op. at 260. Moreover, there was no evidence that on the day of Bakerman's accident, the condition of the ladder was any different than it had been during years of daily use. There were no missing or broken rungs on the ladder.
The only witness to the fall was the claimant. When asked to explain the circumstances of his fall, he testified:
A. I had to get to the top shelf to pick out, it's a box, it was called a varona vase. And it was in a box, very light weight, about fifteen inches cubed, 15 by 15 by 15. And there was 
Q. Was it a ceramic vase?
A. What?
Q. Was it a ceramic vase?
A. No, actually it was a glass vase.
Q. Okay.
A. I think it may have had a little metal support on it or something, but it was very light weight, you know, heavy packed with a lot of stuff in it to protect the glass. They were stacked two high on the [top] shelf.
And I moved the ladder as best I could in the position. I had a lot of stuff on the floor, boxes on the floor. So I positioned it the best I could in there. Went up. I had to go to the top rung. I was holding on with my right hand and reached over for the box, top box. Couldn't really get a good grip on the box.
Finally got my finger inside in between the, where it folded over so could I get like inside the box a little bit. I was pulling it out and the bottom box started to move with it.
Now I had positioned the ladder the way I normally do, which is leaning also against one the vertical rails so I felt it was pretty secure. I mean given all the instances. And I just wanted to push the bottom box back in. And I just kind of let go for a second, pushed the bottom box in. And the next thing I know, I'm on the floor the ladder is against the side, okay. And I'm in agonizing pain.
This testimony is the sum of the evidence about what caused the claimant to fall from the ladder. Notably, Bakerman did not testify that the swaying of the ladder or any other defect in the ladder had anything to do with his fall.
The record clearly shows that this was an accident and though certainly an unfortunate occurrence, it is precisely the kind of accident which has been historically resolved within the workers' compensation system. This is an accident in which the *268 quid pro quo of the payment of workers' compensation benefits without reduction for the employee's own negligence is intended to work and which did in fact work, since the claimant immediately began receiving workers' compensation benefits after his fall.
This action should not have been allowed to also proceed in the circuit court to a recovery for common-law damages. The trial court erred in not directing a verdict for the employer. It is the trial court's role to test the sufficiency of the evidence at the close of the claimant's case and to draw the legal distinction between conduct which is ordinary negligence and conduct which is intentional. An excellent opinion summarizing the case law on this issue is by Judge Warner in Pendergrass v. R.D. Michaels, Inc., 936 So.2d 684 (Fla. 4th DCA 2006). The underlying injury in Pendergrass, like the action in present case, arose before the 2003 statutory amendment. In that case, the Fourth District Court of Appeal found:
In reviewing the many cases in which the substantial certainty test has been met and those in which it has not, the courts have highlighted two factors which show the type of intentional conduct which a reasonable person would consider resulting in the substantial certainty of injury or death: 1) knowledge of prior accidents or defects and 2) intentional conduct to prevent the employee from learning and appreciating the risks involved in the work specifically known by the employer.
Id. at 691. After referring to numerous cases in which the other district courts held that the operative facts did not support the intentional tort exception as a matter of law, the Fourth District held that the intentional tort exception was inapplicable in Pendergrass because the plaintiffs only offered proof of, at most, negligent conduct. Id. at 691-93 (discussing Bourassa v. Busch Entm't Corp., 929 So.2d 552 (Fla. 2d DCA 2006); Casas v. Siemens Energy & Automation, Inc., 927 So.2d 922 (Fla. 3d DCA 2006); Allstates Fireproofing, Inc. v. Garcia, 876 So.2d 1222 (Fla. 4th DCA 2004); Fleetwood Homes of Fla., Inc. v. Reeves, 833 So.2d 857 (Fla. 2d DCA 2002), quashed on other grounds, 889 So.2d 812 (Fla.2004)).
In the instant case, the Third District likewise correctly held that "the evidence was legally insufficient to support liability under the intentional tort exception to workers' compensation immunity." Bombay, 891 So.2d at 557. The majority's insistence that the Third District found the evidence sufficient to present the liability question to the jury is a misreading of the decision for review.[5]
*269 In addition to erroneously concluding that the action should proceed to a jury determination, the trial court further erred by instructing the jury as if Bombay was an ordinary negligence case. The trial court instructed the jury on the liability issue without using the word "intentional." The trial court then gave an instruction on comparative negligence and submitted to the jury a verdict form that allowed for a finding of comparative negligence. Such instruction was directly contrary to section 768.81(4)(b), Florida Statutes (1995), which provided that comparative negligence was not applicable in an intentional tort action, a principle which had long been the common law of Florida. See Mazzilli v. Doud, 485 So.2d 477 (Fla. 3d DCA 1986) (holding comparative negligence not defense to intentional tort), review dismissed, 492 So.2d 1333 (Fla.1986); see also Deane v. Johnston, 104 So.2d 3, 7-8 (Fla.1958) ("It is commonly conceded that contributory negligence will not bar an action for an intentional tort.").
These instructions and the verdict form confirm that the trial judge in the present case proceeded as if the case was a negligence action, not an intentional tort action. The crux of the intentional tort exception is whether the conduct was "intentional." Our opinion in Turner states that the basis of the claim in that case was that PCR, Inc. "engaged in conscious and intentional conduct which was substantially certain to result in injury or death." 754 So.2d at 690. The foundational and crucial word "intentional" has to be used and defined for the jury in an intentional tort case in which an employee is suing an employer for a work-related injury. Thus, even if the employee claimant had presented prima facie proof of an intentional tort, which I conclude he did not, the jury instructions and verdict form would have been plain error had this action been properly presented to the jury as an intentional tort case.
I make these points about how this case was tried as a negligence case rather than as an intentional tort case because I am concerned about what appears to be a failure to observe a distinct bright-line demarcation between what would be an ordinary negligence case by a claimant against a nonemployer defendant and a case based upon the same facts which is brought by an employee against an employer for a work-related injury. In an action for a work-related injury by an employee against an employer where the trial court determines that the claimant has presented sufficient prima facie proof to meet the standard for an intentional tort, the case must proceed to the jury as an intentional tort action with proper instructions and application of the intentional tort law on comparative negligence. That was not done in this case. Once again, the present action should not have proceeded to a jury determination, and as a result, errors in the jury instructions and verdict form should be held to be moot. See Franklin Life Ins. Co. v. Davy, 753 So.2d 581, 589 (Fla. 1st DCA 1999) ("[T]hese claims should not have reached the jury. Thus, any claim of error relating to the jury *270 instruction as to such claim is moot."). However, since the majority has concluded that these facts do raise a jury question and quashed the Third District's decision, it should reverse the final judgment due to the erroneous jury instructions and verdict form.
In conclusion, the majority plainly fails to follow this Court's precedent and reaches a decision which is contrary to law, logic, and reason. The best course would be to discharge jurisdiction. Short of that, the Third District's decision should be approved.
CANTERO and BELL, JJ., concur.
NOTES
[1] We note that this decision will have limited application because the Legislature has amended the statute to add concealment as an essential factor.
[2] The Fisher complaint alleged that the employer ordered the employee to enter and clean a pipeline containing dangerous methane gas without safety equipment even though the employer knew that the risk would in all probability result in injury or death. Fisher v. Shenandoah Gen'l Constr. Co., 472 So.2d 871, 872 (Fla. 4th DCA 1985), quashed, 498 So.2d 882 (Fla.1986). This Court found the allegations of the complaint insufficient where they spoke in terms of probability rather than certainty. 498 So.2d at 884. However, we later expressly receded from that opinion to the extent that it could be read as rejecting the facts within as a sufficient basis to support an allegation of substantial certainty of injury. Turner v. PCR, Inc., 754 So.2d 683, 691 n. 8 (Fla.2000). Notably, Fisher lacked any factual allegation that the danger had been concealed from the employee or that the employee was unaware of the danger.
[3] In 2003, the Florida Legislature codified the intentional tort exception to workers' compensation immunity and heightened the standard needed to fall within the exception. Florida's Workers' Compensation law now permits suit against an employer:

(b) When an employer commits an intentional tort that causes the injury or death of the employee. For purposes of this paragraph, an employer's actions shall be deemed to constitute an intentional tort and not an accident only when the employee proves, by clear and convincing evidence, that
1. The employer deliberately intended to injure the employee; or
2. The employer engaged in conduct that the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee, and the employee was not aware of the risk because the danger was not apparent and the employer deliberately concealed or misrepresented the danger so as to prevent the employee from exercising informed judgment about whether to perform the work.
§ 440.11(1)(b), Fla. Stat. (2006). The statute does not apply retroactively and thus does not apply to this case.
[4] Some of the facts presented to the jury that reflect a substantial certainty of injury include: the wooden, A-frame ladder could not be used in the open position because the stock room was crowded and narrow; the ladder would be leaned against the shelves in the closed position; the safety locks on the ladder could only be engaged in the open position; the feet of the ladder were cut at an angle so that they would be stable in the open position; the feet had no rubber traction shoes; the ladder was old, rickety, and would increasingly sway from side to side as one ascended it; it was necessary to stand on the very top of the ladder to retrieve merchandise from the top shelves; the top shelves were estimated to be sixteen to twenty feet high; Bakerman complained about the ladder to the store manager; the store manager requested permission to purchase a new ladder from the district manager; the district manager continually refused permission to purchase a new ladder; Bakerman fell while retrieving a vase from an upper shelf and fractured his heel; and Bombay took no action to replace the ladder until shortly after Bakerman's fall.
[5] The majority opinion twice misstates the Third District's position, claiming that the Third District "noted that the issue presents a jury question as to whether the employer had engaged in conduct that is substantially certain to result in injury or death." Majority op. at 263; see also majority op. at 264. What the Third District actually said is:

In the present case the trial court ruled that there was no evidence of any deliberate intent to injure. Thus, the first alternative under Turner was unavailable to Bakerman.
Under the second Turner alternative, however, the court concluded that the evidence presented a jury question on whether the employer had engaged in conduct which was substantially certain to result in injury or death.
Bombay, 891 So.2d at 557. A fair reading of this section can only be that "the court" is the trial court, not the Third District. The Third District did not conclude that "the evidence presented a jury question" but instead held that "the evidence was legally insufficient to support liability under the intentional tort exception to workers' compensation immunity." Id. This interpretation is supported by Judge Schwartz's concurrence with the majority of the Third District on rehearing. Judge Schwartz had in no uncertain terms dissented from the original opinion because he found insufficient evidence to invoke the intentional tort exception:
It is simply beyond my comprehension that the employer's use of a worn ladder can amount to the extreme manslaughter-type misbehavior which is necessary to avoid the immunity conferred by the Workers' Compensation Act.
Bombay Co., Inc. v. Bakerman, 29 Fla. L. Weekly D862 (Fla. 3d DCA Apr.7, 2004) (Schwartz, J., dissenting), withdrawn on reh'g, 891 So.2d 555. The majority is simply wrong in its characterization of the Third District's opinion.