COPE, J.
This is an appeal of a summary judgment in favor of Bank of America Corporation based upon employer immunity under the Workers’ Compensation Law. The question is whether the plaintiff Marlene Barnett is entitled to proceed against the defendant Bank of America on the basis of the intentional acts exception to workers’ compensation immunity.
In 2002, the plaintiff was the manager at Bank of America’s Bay Harbor Island branch. The bank was a tenant on the first floor of a building at 1108 Kane Concourse. The landlord decided to renovate the building, and Bank of America agreed to construct a new banking facility on the first floor.
Bank of America wished to keep its branch open during the renovations. It constructed a temporary banking center occupying part of its preexisting space. The bank employees were moved into that space in May or June 2002.
The plans called for a one-hour rated fire wall to be built from floor to ceiling which would separate the temporary banking center from the construction area. According to the testimony of the plaintiff as well as two other employees, the wall was not built in accordance with the plans, did not run up to the ceiling, and did not completely separate the temporary banking center from the construction area.
According to the depositions, the opening between the construction area and the temporary banking center allowed a constant influx of dust, odors, and fumes. Each day the computers and tables were covered by a thick layer of dust, including concrete dust and fiberglass particles. The employees were breathing dust and fumes from glue, paints and paint thinners. *950 There was no operable air conditioning system.
According to the depositions, within several weeks the plaintiff and other employees started becoming ill from this exposure with asthma, bronchitis, sinus problems, nose bleeds, headaches, and dermatitis. Eight of the twelve employees made claims for health problems.
According to the deposition testimony, the plaintiff and other employees contacted executives from Bank of America to complain. The plaintiff, as manager, requested that the employees be moved to another location or that the bank bring a trailer to the site to house the temporary bank facility. The executives refused these requests because the branch had a safe deposit area which the bank wanted to keep open for its customers. The plaintiff was ordered to keep her employees working at the existing site.
Eventually the bank brought in fans and a cleaning crew. After employees began making workers’ compensation claims, the bank also brought in air purifiers and coolers. The employees, however, kept getting sick. In December 2002, the bank temporarily closed the facility but then reopened it. Finally in January 2003, the bank shut down the temporary center and moved the employees to another site.
The plaintiff brought suit against the bank and other defendants for injuries she sustained.[1] The bank moved for summary judgment on the basis of workers’ compensation immunity. The bank maintained that the firewall separating the construction area from the temporary bank facility reached all the way to the ceiling, and not partway as the employees testified. The bank argued that it prepared its plans using qualified design professionals and pulled the appropriate building permits. The bank denied that any of the air from the construction area entered the bank’s temporary facility. The bank argued that it responded properly to the employee complaints and that as of December 2002, interior air testing revealed that the air quality in the building was within a normal range.
In opposition, the plaintiff relied on employee testimony outlined earlier in this opinion. The plaintiff also filed an affidavit of plaintiffs environmental medical expert, Dr, Albert F. Robbins:
3. I have reviewed the Material Safety Data Sheets of products that were used in this deficiently ventilated structure where they worked.
4. I have been informed that they were exposed to daily, multiple hour exposures of concrete particulates, including silicas, various construction fibers, mold spores and volatile organic chemicals, for which I have reviewed the Material Safety Data Sheets.
5. The Material Safety Data Sheets on these products and my own knowledge and experience with the other compounds through my environmental medicine practice show these compounds to be quite hazardous individually, and substantially more hazardous when inhaled in combination.
6. This environment in the work place was virtually certain to cause injury to the Plaintiffs, Marlene Barnett, Gary Bullard, Oswaldo Membreno, Michelle Morgan, Daisy Herrera, Anateresa Vargas, Lucrecia Vargas and Marek Wojcik.
The trial court granted the bank’s motion for summary judgment, and the plaintiff has appealed.
*951 The plaintiff sustained her injuries in the course and scope of her employment. Ordinarily workers’ compensation provides the exclusive remedy for an employee for such injuries, and the employer is immune from suit. See Turner v. PCR, Inc., 754 So.2d 683, 686 (Fla.2000).
There is, however, an intentional tort exception to workers’ compensation immunity. Id. The intentional tort exception is applicable where the employer is “shown to have either ‘exhibite[d] a deliberate intent to injure or engagefd] in conduct which is substantially certain to result in injury or death.’ ” Id. at 687.[2]
In this case the plaintiff relies on the second alternative. She alleges that the employer engaged in conduct which was substantially certain to result in injury or death. This is measured by an objective standard. Turner, 754 So.2d at 688. The question is “whether a reasonable person would understand that the employer’s conduct was ‘substantially certain’ to result in injury or death to the employee. Under this approach, the employer’s actual intent is not controlling.” Id. These principles have been reiterated in Bakerman v. The Bombay Co., 961 So.2d at 262-65.
This is a motion for summary judgment on which we read the factual record in the light most favorable to the plaintiff as the nonmoving party. When the record is read in that light, it is clear that there are disputed issues of material fact regarding the substantial certainty test.
To begin with, the bank asserts that there was a firewall which completely separated the temporary bank premises from the construction area so that no dust or fumes could enter the temporary bank quarters. But that is a disputed fact. The testimony of several bank employees states that the partition wall did not reach all the way to the ceiling and was open at the top. The bank itself acknowledges that it provided additional cleaning staff and other devices to correct the additional dust that was entering the premises—a concession which seems to acknowledge that there was no complete separation between the construction area and the temporary bank quarters. The bank also acknowledges that it installed fans, coolers, and air purifiers in November 2002 which actions are, again, inconsistent with its denial that there was any problem created by the ongoing construction.
Based on the applicable cases, the summary judgment should not have been granted. In Fisher v. Shenandoah General Construction Co., 498 So.2d 882, 883 (Fla.1986), receded from in part, Turner v. PCR, Inc., 754 So.2d at 691 n. 8, the plaintiff alleged that the employer required the decedent to enter pipes which it knew contained noxious fumes and which would “in all probability” cause injury or death. The complaint alleged that the employer had failed to provide its workers with oxygen masks and other appropriate safety equipment. As originally announced in 1986, the Supreme Court held that these allegations did not satisfy the substantial certainty standard, Fisher, 498 So.2d at 883, but in 2000 in Turner, the Supreme Court modified Fisher and stated that the Fisher facts constituted “a sufficient basis to support an allegation of substantial certainty of injury.” Turner, 754 So.2d at 691 n. 8. Thus, requiring an *952 employee to work in an area containing harmful noxious fumes, without providing adequate safety equipment, satisfies the substantial certainty standard.
In Turner, the employer was conducting research on air conditioning coolants. A supplier of the chemical tetrafluoroethy-lene (TFE) advised the employer that it was going to discontinue supplying TFE because of its hazardous character. Id. at 685. The employer continued to use the product in its testing, and according to expert testimony, did so using equipment which was fundamentally unsafe. The Court held that these facts created a disputed issue of material fact on whether the employer’s conduct created a substantial certainty of injury, and ruled that the summary judgment in favor of the employer must be reversed. Id. at 691.
In Cunningham v. Anchor Hocking Corp., 558 So.2d 93 (Fla. 1st DCA 1990), the plaintiffs alleged that they sustained injuries from inhaling toxic fumes at a manufacturing plant where they were not provided adequate safety equipment. They contended that the employer “diverted the smokestack so that fumes would flow into, rather than outside of, the plant, and that they periodically turned off the plant ventilation system, thereby intensifying the level of exposure.” Id. at 96. The plaintiff also alleged that the employer “removed manufacturers’ warning labels on toxic substance containers, misrepresented the toxic nature of substances, and knowingly provided inadequate safety equipment, while misrepresenting the danger or extent of the toxicity in the plant and the need for proper safety equipment.” Id. at 96-97. The First District held that the substantial certainty standard was met and reversed the order dismissing the complaint.
It bears emphasis that the substantial certainty standard applies where there is substantial certainty of either injury or death. Turner, 754 So.2d at 687 (emphasis added). Thus the substantial certainty test has been applied in cases involving a non-fatal injury, Cunningham; Bakerman, 961 So.2d at 259) (ankle injury), as well as cases involving fatalities. Fisher; Turner.
The bank relies on McClanahan v. State, 854 So.2d 793 (Fla. 2d DCA 2003). In that case the plaintiffs were employees of the Florida Department of Juvenile Justice. They worked in a juvenile detention center which had been built in the early 1990s. They alleged that there had been negligence in the design and construction of the building such that it was contaminated by excessive levels of moisture, mildew, and mold. Id. at 794. The plaintiffs alleged respiratory injuries and the wrongful death of a deceased employee. The exact nature of the contamination and extent of risk were not spelled out in the opinion. The Second District concluded that the allegations amounted to claims of negligent conduct and that the substantial certainty test had not been met.
The present case differs significantly. The claim here is that the temporary work space was not properly separated from the construction area and that the employees were, in effect, being required to work in the middle of a construction project. They alleged continuous exposure to dust and other particles as well as noxious fumes. This persisted from May or June 2002 to January 2003 when the employees were finally allowed to relocate to an alternate space. The factual circumstances here are better documented, including a medical expert affidavit, and are entirely distinguishable from those in McClanahan. The circumstances present here bear a greater resemblance to Fisher, Turner, and Cunningham than to McClanahan.
*953 The bank relies on Pendergrass v. R.D. Michaels, Inc., 936 So.2d 684 (Fla. 4th DCA 2006). The Pendergrass case involved the collapse of a wall at a construction site where the affidavit of the plaintiffs expert only stated that the employer had been negligent and did not address the substantial certainty standard. Id. at 693.[3]
The bank relies on Bourassa v. Busch Entertainment Corp., 929 So.2d 552 (Fla. 2d DCA 2006), but that ease is not helpful to the bank. The plaintiff was an animal trainer at Busch Gardens. She conducted a simulated blood draw from a full grown lion. There was a procedure which, “[wjhen performed correctly, the procedure did not allow for any part of Max’s [the lion’s] mouth to come into contact with any part of the keeper’s body.” Id. at 555. However, on the day of the incident, the lion was able to grab the plaintiffs fingers, resulting in a struggle in which the plaintiffs arm was severed at the elbow. The Second District upheld the workers’ compensation immunity, based on the fact that Busch Gardens had a training program in place which was believed to be adequate to address the risk of working with the lion.[4]
The bank relies on Wilks v. Boston Whaler, Inc., 691 So.2d 629 (Fla. 5th DCA 1997), which involved a respiratory injury. The Wilks case was decided in 1997 and was based squarely on the Supreme Court’s decision in Fisher. The Florida Supreme Court receded from Fisher in 2000. Turner. The legal basis of Wilks has been undermined.
The bank also maintains that the expert affidavit of Dr. Robbins was legally insufficient. The objection in the trial court was that the affidavit was lacking in personal knowledge and did not attach the documents to which the doctor referred. The legal authority cited by the bank was CSX Transportation, Inc. v. Pasco County, 660 So.2d 757, 759 (Fla. 2d DCA 1995). That case involved affidavits submitted by fact witnesses trying to establish whether construction had begun on a railroad crossing as of a particular date. The affidavit in this case is the affidavit of an expert witness. The bank has not provided any authority for the proposition that the affidavit is insufficient as the affidavit of an expert witness.
For the stated reasons, there are disputed issues of material fact and summary judgment should not have been granted. We reverse the summary judgment and remand for further proceedings.

. The claims against the other defendants are not involved here.

. The version of the Workers' Compensation Law applicable here is the version in effect in 2002 through January of 2003. Later in 2003, the legislature amended the Workers' Compensation Law regarding the intentional tort exception to workers' compensation immunity, but that amendment does not apply retroactively to this case. See Bakerman v. The Bombay Co., 961 So.2d 259, 262 n. 3 (Fla.2007).

. Relying on Pendergrass, the bank argues that there is no indication that the bank concealed the working conditions from the plaintiff and the other employees. This argument is misplaced. Pendergrass was decided in 2006. In 2007 the Florida Supreme Court decided Bakerman, which held that concealment of hazardous conditions is not an indis-pensible element of the substantial certainty analysis. 961 So.2d at 263. Concealment is simply a factor which can be considered in the substantial certainty analysis, but it is not a mandatory element.

. As an additional factor, the Bourassa court noted that the employer had not concealed any of the dangers from the plaintiff, id. at 558, relying in part on this court's decision in Bombay Co. v. Bakerman, 891 So.2d 555, 557 (Fla. 3d DCA 2004). This court's decision in Bombay was quashed by the Florida Supreme Court in Bakerman, 961 So.2d 259 (Fla.2007), and the concealment portion of the Bourassa opinion does not survive Bakerman. See supra note 3.