936 So.2d 684 (2006)
Damien PENDERGRASS, as Personal Representative of the Estate of Arthur Pendergrass, Jr., a deceased adult single man, for and on behalf of lawful claimants: The Estate of Arthur Pendergrass, Jr., Damien Pendergrass, Artis Pendergrass, Dedrick Pendergrass and Taris Pendergrass, individually, Appellants,
v.
R.D. MICHAELS, INC., a Florida corporation, Oceanview Construction Corp., a Florida corporation, and Staff Leasing, Inc., a Florida corporation, Appellees.
No. 4D05-1598.
District Court of Appeal of Florida, Fourth District.
August 2, 2006.
Rehearing Denied September 22, 2006.
*685 Jeanne C. Brady and Frank R. Brady of Brady & Brady, P.A., and Arvid J. Peterson, III of Law Offices of Arvid J. Peterson, III, P.A., Boca Raton, for appellants.
Michele I. Nelson of Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A., West Palm Beach, for appellee R.D. Michaels, Inc.
J. Daniel Ennis and John J. Cavo of Lane, Reese, Aulick, Summers & Ennis, *686 P.A., Coral Gables, for appellees Oceanview Construction Corp. and Staff Leasing, Inc.
WARNER, J.
The personal representative of the Estate of Arthur Pendergrass appeals a final summary judgment determining that the defendant-employers are entitled to workers' compensation immunity for a job accident which killed Pendergrass. Because the evidence does not show that the employer deliberately intended to injure Pendergrass or engaged in conduct substantially certain to cause injury or death, we affirm.
Appellee, R.D. Michaels, Inc., as general contractor for construction of a building in Boynton Beach, contracted with appellee, Oceanview Construction Corporation, for the masonry work of constructing the concrete block walls. Oceanview uses Staff Leasing, Inc., another defendant, to process checks for its employees. Staff Leasing provided employees to Oceanview but had no control over the employees or the jobsite.
Oceanview hired Arthur Pendergrass as a mason tender a few days before the tragic incident involved in this case. A mason tender is an unskilled laborer who assists the masons, totes the concrete block and cement, and generally provides the unskilled labor that the masons need to construct a concrete block wall.
Oceanview was constructing the four walls of the building during January 2000. The walls took from seven to ten days to finish. To lay the blocks, scaffolding is erected and remains in place until the masonry is complete. Then the scaffolding is removed, the area is cleaned up, and the walls are braced before the tie beam is poured. All four walls of the building had been completed on the Friday of the accident and were tied together at the corners by rebar, ready for the tie beam to be poured the following week.
On that day the weather was windy. The scaffolding was being removed, as the walls, which were fourteen feet high, were finished. Jim Shaw, Michaels' superintendent, discussed with Oceanview's owner, Lee Schaeffer, the necessity of bracing the walls due to the possibility of windy weather over the weekend. Materials were ordered and delivered for bracing, and a crew was to arrive at 4:00 p.m. to brace the walls. The employees, including Pendergrass, were cleaning up the site in preparation for the bracing when the north and south walls collapsed around 3:00 p.m. The east and west walls did not collapse. Pendergrass was killed in the collapse of the north wall. While the exact cause of the collapse is unknown, the evidence suggests that a strong gust of wind must have toppled the wall.
The Occupational Safety and Health Administration investigated the accident and cited both Michaels and Oceanview for OSHA violations. OSHA cited Michaels for: (1) failing to establish a limited access zone prior to the start of construction on the masonry wall and (2) failure to adequately brace masonry walls over eight feet in height to prevent collapse until permanent elements of the structure were in place. Both violations were classified as "serious."
Oceanview was issued four citations by OSHA for: (1) failing to initiate or maintain a safety program for its employees; (2) failing to instruct each employee in the recognition and avoidance of unsafe conditions; (3) failing to establish a limited access zone prior to the start of construction of a masonry wall; and (4) failing to adequately brace masonry walls over eight feet in height to prevent collapse until permanent supporting aspects of the structure *687 were in place. The first three violations were classified as "serious," while the fourth was classified as "willful."
In support of the willful violation, the OSHA report found that Oceanview had knowledge of OSHA's regulation that masonry walls in excess of eight feet required bracing. Oceanview's contract with Michaels made Oceanview responsible for the bracing. According to the report, the nature and extent of the violation constituted plain indifference to the safety and health of its employees. The OSHA report further found that Oceanview intentionally disregarded its health and safety responsibility because there was no safety program, and the employees were not trained for the task. However, OSHA settled the citation with Oceanview for a fine based upon serious violations, and it deleted the willful classification for the violation of the bracing requirement.
The Estate of Arthur Pendergrass filed suit against Michaels, Oceanview, and Staff Leasing. The Estate asserted that Staff Leasing was an employer of Arthur Pendergrass, that Oceanview was an employer of Arthur or otherwise in control of both the job site and Arthur, and that Michaels was the general contractor of the job site. Against both Michaels and Oceanview, the Estate alleged that the defendants were negligent for: failure to provide a limited access zone around the wall prior to the start of construction, failure to brace the walls until permanent support was in place, deliberate determination not to comply with a standard, failure to provide a safety program, and failure to instruct Arthur Pendergrass in safety precautions and recognition of dangers. Against Staff Leasing, the Estate alleged: deliberate disregard of a standard, failure to instruct Pendergrass in recognition and avoidance of unsafe conditions, and failure to provide a safety program. Finally, the Estate alleged that the defendants knew or should have known that these acts were substantially certain to cause injury or death.
The defendants answered alleging that they were entitled to workers' compensation immunity, because Pendergrass' survivors had received workers' compensation benefits. After discovery, all defendants moved for summary judgment on the workers' compensation immunity defense, relying on depositions of Richard Lillard, the president of Michaels; Jim Shaw, Michaels' superintendent; and Lee Schaeffer, Oceanview's owner, as well as the contracts between the parties.
In the depositions, Lillard, Shaw, and Schaeffer testified that they had never experienced a wall collapse in all their years of contracting. Lillard testified that it was not unusual in the industry for walls to progress without being braced where there was a limited access area around them. Schaeffer testified that Oceanview did not have a specific safety program but generally told its employees to use common sense and to be careful. The mason tenders were required to wear hard hats at all times. Pendergrass would have received these instructions.
On this job the walls had reached a height of eight feet about two days prior to the accident. They had not been braced, because the scaffolding around the walls was satisfactory bracing. They were connected by rebar, but the tie beam had yet to be poured. A limited access area was created and only workers on the wall had access to it. Schaeffer testified that Pendergrass was a mason tender who cleaned up the area in preparation for the bracing that was to occur on the afternoon of the accident. He testified that OSHA rules acknowledge that scaffolding was sufficient. A wall cannot be braced as it is built but is only braced after the scaffolding comes down. The method followed for *688 building the wall was the same method followed when the wall was rebuilt and is the method he has always followed and is customary in the industry. He saw no potential for danger.
In opposition, the Estate filed the OSHA report, various OSHA guidelines and materials, and an affidavit of an expert which, for his opinion, simply recited the allegations of negligence in the complaint. The filings with respect to the OSHA report include OSHA Standards Interpretation and Compliance letters of February 6, 1989, and October 7, 1988. They reveal that OSHA considers that a masonry's contractors actively engaged in the construction of a wall are permitted in the limited access area and that the limited access area is only necessary when the walls are not braced. Further, if the wall is over eight feet but the employer determines that the wall is adequately supported under prevailing conditions, then no bracing will be required.
At the hearing, the Estate argued that the defendants were not entitled to workers' compensation immunity based upon both the criminal acts exception of the workers' compensation law and the intentional tort exception to workers' compensation immunity. The court carefully considered the law and the evidence and granted summary judgment to all parties. The Estate appeals, claiming that workers' compensation immunity does not shield the defendants under the criminal acts and intentional tort exceptions. We disagree and affirm the summary judgment.
Florida's Workers' Compensation Act, Chapter 440, creates a system to compensate employees for work-related injuries and is intended to provide a "quick and efficient delivery of disability and medical benefits to an injured worker and to facilitate the worker's return to gainful reemployment at a reasonable cost to the employer." § 440.015, Fla. Stat. (2000). See also Turner v. PCR, Inc., 754 So.2d 683 (Fla.2000). "Essentially, under this no-fault system, the employee gives up a right to a common-law action for negligence in exchange for strict liability and the rapid recovery of benefits." Id. at 686. As noted by the supreme court in Turner, the Legislature specifically provided that:
the facts in a workers' compensation case are not to be interpreted liberally in favor of either the rights of the injured worker or the rights of the employer. Additionally, the Legislature hereby declares that disputes concerning the facts in workers' compensation cases are not to be given a broad liberal construction in favor of the employee on the one hand or of the employer on the other hand, and the laws pertaining to workers' compensation are to be construed in accordance with the basic principles of statutory construction and not liberally in favor of either employee or employer.
§ 440.015, Fla. Stat. Thus, while remedial legislation is generally interpreted liberally in favor of the errors to be corrected, the Legislature has specifically rejected such an interpretation for the workers' compensation law. These principles must be kept in mind as we examine this case.

Criminal Acts Exception
Section 440.11(1) provides the employer with immunity from civil suit by the worker if the employer complies with the provisions of the workers' compensation law and secures compensation for its employees. That section also extends immunity to fellow employees unless the fellow employee acts towards the injured worker with willful or wanton disregard, physical aggression or gross negligence. The statute then provides for immunity to sole proprietors, partners, officers, directors, *689 and managing agents so long as their acts do not constitute a violation of law carrying a jail term of sixty days or longer. Specifically, the statute provides:
The same immunity provisions enjoyed by an employer shall also apply to any sole proprietor, partner, corporate officer or director, supervisor, or other person who in the course and scope of his or her duties acts in a managerial or policymaking capacity and the conduct which caused the alleged injury arose within the course and scope of said managerial or policymaking duties and was not a violation of a law, whether or not a violation was charged, for which the maximum penalty which may be imposed does not exceed 60 days' imprisonment as set forth in s. 775.082.
§ 440.11(1), Fla. Stat.
The Estate claims that all three corporate defendants are not entitled to workers' compensation immunity because the willful OSHA violation for which Oceanview was cited was punishable by a jail term of at least sixty days. However, we need not delve into what the punishment for OSHA violations is, because the criminal acts exception set forth in the statute on its face does not apply to the corporate defendant itself, only to individuals who are officers, directors, or managing agents, i.e., actual persons. Here, the Estate has sued only the corporate employers themselves. Thus, the statutory exception for criminal acts does not apply.
Gerth v. Wilson, 774 So.2d 5 (Fla. 2d DCA 2000), upon which the Estate relies, is distinguishable from this case. Although Gerth held that an OSHA violation which provides for an incarceration penalty ought to deprive the employer from immunity just as those crimes subject to imprisonment under section 775.082, Gerth involved an action against a sole proprietor. Thus, as a sole proprietor of a business, the employer came within the specific terms of the exception. Consequently, we do not need to determine whether we agree or disagree with Gerth.
Based upon the clear and unambiguous language of the statute, the criminal acts exception does not apply to the corporate defendants. The defendants were entitled to summary judgment on this claim.

Intentional Tort Exception
Despite the tort immunity provided by the workers' compensation law, our supreme court has carved an exception to that immunity where the employer has committed an intentional tort against the employee. See Turner v. PCR, Inc., 754 So.2d 683 (Fla.2000). Relying on cases such as Fisher v. Shenandoah Gen. Constr. Co., 498 So.2d 882 (Fla.1986), receded from in part by Turner, 754 So.2d at 687 n. 4, the court in Turner held that "in order to prove an intentional tort, the employer must be shown to have either `exhibite[d] a deliberate intent to injure or engage[d] in conduct which is substantially certain to result in injury or death.'" Id. at 687 (quoting Fisher, 498 So.2d at 883). "The first alternative employs a subjective test. The second alternative applies an objective test to determine whether a reasonable employer should have known that its intentional conduct was substantially certain to result in injury or death." FCCI Ins. Co. v. Horne, 890 So.2d 1141, 1143 (Fla. 5th DCA 2004) (citing Turner).[1]
*690 In Turner, the employer, PCR, was developing a replacement coolant for Freon. One of the compounds it was using was highly reactive and subject to explosions. In fact, the company which manufactured the compound notified PCR that it was taking it off the market because of its explosive qualities. Even with that knowledge, PCR continued to use it but did not inform its employees of this danger. Two experts opined that the processes and facilities that PCR was using were fundamentally unsafe and substantially certain to result in explosions. And PCR had experienced prior explosions, some of which included the use of the suspect compound.
The supreme court determined that the evidence was sufficient to present material issues of fact supporting the objective test that a reasonable employer would know that its intentional conduct was substantially certain to result in injury or death. Specifically, it pointed to the prior explosions and the modification of facilities which PCR knew were unsuitable for the purposes. One expert also stated that PCR's chief technician believed that an explosion was imminent. Thus, prior warnings and knowledge of earlier incidents together with concealment from employees of the danger made the court conclude that the conduct was sufficient to raise an issue of fact for the jury to determine.
Other cases finding a substantial certainty of injury or death from the employer's intentional conduct concentrate either on knowledge of prior incidents or an employer's concealment of knowledge of the dangers. In Connelly v. Arrow Air, Inc., 568 So.2d 448 (Fla. 3d DCA 1990), an employee pilot was killed in an airplane crash. There was evidence that the plane was routinely overloaded and improperly maintained. Repairs were never done except at the plane's base of operations because of cost. Further, the employer withheld this information from its pilot. The court found that this conduct was sufficient to show that the employer's intentional conduct was substantially certain to result in injury or death. Likewise, the first district found the intentional torts exception applicable in Cunningham v. Anchor Hocking Corp., 558 So.2d 93 (Fla. 1st DCA 1990), which involved toxic substances and the removal of warning labels by the employer to prevent knowledge by the employees. In addition, the employer redirected smokestacks in the plant to increase the toxic fumes breathed by the employees. This too was sufficient to support proof of the objective test of intentional conduct substantially certain to cause injury or death.
The Turner court also concluded that the facts of Fisher v. Shenandoah Gen. Constr. Co., 498 So.2d 882 (Fla.1986) and Lawton v. Alpine Engineered Products, Inc., 498 So.2d 879 (Fla.1986) were both sufficient to meet the objective test of substantial certainty. Fisher involved the exposure of employees to deadly gases in an underground pipe and the employer's intentional avoidance of OSHA safety inspections by conducting some of the dangerous work at night. Similarly, Lawton met the objective test where the employee was injured when his hand was crushed by a punch press, and the employer had failed *691 to provide operation guards and training to the operators even after having been specifically advised of this necessity by the machine's manufacturer. See also EAC USA, Inc. v. Kawa, 805 So.2d 1 (Fla. 2d DCA 2001). Again, the supreme court stressed the prior warnings or knowledge coupled with concealment or inaction in the face of such warnings.
Both our court and the second district have held that knowingly placing an employee in direct contact with specific, violent individuals without warning the employee of the danger meets the intentional tort exception to workers' compensation immunity. See Patrick v. Palm Beach County Sch. Bd., 927 So.2d 973 (Fla. 4th DCA 2006); Sierra v. Associated Marine Insts., Inc., 850 So.2d 582 (Fla. 2d DCA 2003). Again, in those cases the employer had prior specific knowledge of dangerous conditions, yet exposed its employees to the danger without sufficient warnings or training.
In reviewing the many cases in which the substantial certainty test has been met and those in which it has not, the courts have highlighted two factors which show the type of intentional conduct which a reasonable person would consider resulting in the substantial certainty of injury or death: 1) knowledge of prior accidents or defects and 2) intentional conduct to prevent the employee from learning and appreciating the risks involved in the work specifically known by the employer.
In Bourassa v. Busch Entm't Corp., 929 So.2d 552 (Fla. 2d DCA 2006), the court determined that the employer could not be liable under the intentional tort exception where an animal trainer lost her arm when working with a lion. Although the employer knew the lion was extremely dangerous, it had a comprehensive training program for employees working with the lion and no incident had ever happened before with any of its lions. Thus, there was no showing of deliberate indifference to known hazards which were substantially certain to cause injury.
In Fleetwood Homes of Florida, Inc. v. Reeves, 833 So.2d 857 (Fla. 2d DCA 2002), quashed on other grounds, 889 So.2d 812 (Fla.2004), an employee was killed when a roll of metal slid off a forklift. The employer knew that the aisle where the forklift operated was narrow and difficult to maneuver. It instructed employees in the area to move when the forklift operator honked the horn. The deceased employee was working in the area for the first time and it was unclear whether he had been warned about the forklift. As the forklift passed by the employee's station, the roll hit an obstruction and fell on the employee, killing him. The second district noted that there were undoubtedly safer procedures for carrying materials by forklift in the area but this method had been used for years without incident.
The second district analyzed the case as follows:
[A]ny modestly dangerous activity at a workplace that is repeated often enough or long enough will eventually result in an accident. Although the concept of "gross negligence" examines the combination of circumstances to evaluate the relevant risk, it does not add together or cumulate the individual probabilities of an accident on each occasion to reach a conclusion that an accident is inevitable or that a risk is inordinately high. The tortfeasor's conduct must be evaluated in the context of the particular occurrence. In this case, if anything, the numerous successful performances of the challenged procedure show that a risk of accident on April 1, 1991, was far from imminent. This is not a case in which the employer continued to use the procedure after earlier mishaps or after *692 it received warnings from other governmental or nongovernmental entities.
Id. at 868. The court concluded that the substantial certainty of injury test had not been met. Although the supreme court later quashed the second district's opinion based upon the court's lack of jurisdiction to hear the issue as a non-final appeal, its analysis of the substantial certainty test is instructive.
In Casas v. Siemens Energy & Automation, Inc., 927 So.2d 922 (Fla. 3d DCA 2006), an employee was injured when he put his hand into a punch press. The court found that the evidence did not rise to the level of intentional conduct substantially certain to cause injury or death. Although the employee alleged that the machine was not equipped with the necessary guards, the evidence was undisputed that this was not the case. The employee had received training on the use of the machine. More importantly, the punch presses at this employer had been operated for at least twenty years without serious injury until Casas' incident.
Finally, in Allstates Fireproofing, Inc. v. Garcia, 876 So.2d 1222 (Fla. 4th DCA 2004), an employee was killed when scaffolding he was moving tipped over and hit him. He had been instructed on how to move the scaffolding and had moved it successfully several times before. Nevertheless, on this occasion he moved it incorrectly, causing it to topple. Our court held that the decedent's estate had not alleged facts constituting intentional conduct which was substantially certain to result in death or injury. The decedent had been trained in how to move the scaffolding, and we noted that the danger should have been obvious to the decedent. Thus, Allstates did not prevent the decedent from making an informed decision regarding the risks. Similar to the other cases finding no liability, the court found that Allstates had not concealed or failed to warn about known dangers of moving the scaffolding.
In this case, neither the factor of prior knowledge nor the factor of concealment of risks is present. The complaint alleged a lack of training on safety measures, the lack of a limited access area around the wall, and the failure to brace the wall over eight feet as constituting intentional conduct substantially certain to cause injury. However, neither the mason nor the contractor had ever had a wall fall. Thus, no prior accidents would indicate to them a need to change their construction practices or increase their training.
As to training, although the training was rudimentary, the employees were told to use their common sense and to be aware of their surroundings. Furthermore, the mason tenders in this case were not using any machinery that required specialized training. As in Allstates, it seems fairly obvious that the employees should be aware that walls and bricks might fall. Moreover, the Estate has not suggested what alternative training procedures should have been used. At most, the lack of training is an act of negligence, not intentional conduct affirmatively designed to prevent the employee from learning the actual dangers and risks to which he was exposed.
With respect to the failure to establish a limited access work area, even if one had been established, OSHA regulations in the record permitted the masonry's contractors actively engaged in construction of the wall to be within its boundaries. See 29 C.F.R. § 1926.706(a)(4). The job of cleaning up the area so that someone else can brace the walls seems self-evident. That is part *693 of the construction process.[2] Therefore, even by OSHA standards, the limited access area would not have precluded the masonry employees from entering that area to do their jobs. Further, our supreme court has stated, "failure to provide a safe work place or to follow OSHA guidelines does not constitute an intentional tort." Fisher, 498 So.2d at 883.
Finally, the walls above eight feet were not braced. Although it is unclear as to whether scaffolding was in place at the time of the accident, the defendants have never had an unscaffolded, unbraced wall fall in the past. Thus, there was no evidence that the failure to brace the wall was substantially certain to result in injury.
The fact that OSHA cited Oceanview for a willful violation in failing to brace the walls above eight feet does not change the result in this case or create a material issue of fact for the jury to resolve. A serious violation under OSHA is one where "there is a substantial probability that death or serious physical harm could result from a condition which exists, or from one or more practices, means, methods, operations, or processes which have been adopted or are in use, in such place of employment unless the employer did not, and could not with the exercise of reasonable diligence, know of the presence of the violation." 29 U.S.C. § 666(k) (emphasis added). A serious violation would not of itself constitute an intentional tort, because it only requires a substantial probability, not certainty, of injury or death.
A willful violation, on the other hand, is one of either intentional disregard to an OSHA rule or order or plain indifference to the regulation. See, e.g., Chao v. Occupational Safety & Health Review Comm'n, 401 F.3d 355 (5th Cir.2005). The difference between the willful violation and the serious violation is not the nature or probability of the injury which might occur but of the plain indifference to an OSHA regulation. See Nat'l Steel and Shipbuilding Co. v. Occupational Safety & Health Review Comm'n, 607 F.2d 311 (9th Cir. 1979). Thus, OSHA's citation of Oceanview for a willful violation indicates a plain indifference to a regulation, not substantial certainty that such violation will result in injury or death. The citation for willful violation therefore does not raise a material issue of fact as to whether such intentional conduct is substantially certain to result in injury or death.
Although the Estate filed an expert affidavit to counter the depositions and evidence brought forth by the defendants, the affidavit is unavailing. It merely parroted the allegations of the complaint and opined that the defendants were negligent. In Folds v. J.A. Jones Constr. Co., 875 So.2d 700 (Fla. 1st DCA 2004), the court held that an employee failed to allege the commission of an intentional tort where he alleged merely that the employers engaged in negligent conduct. Thus, here the expert's affidavit which opines only negligence on the part of the defendants fails to raise a material issue of fact.
As did the trial court, we conclude that no material issues of fact remain. The defendants are entitled to workers' compensation immunity. They are not subject to suit under the criminal acts exception, nor are they subject to suit under the intentional tort exception to that immunity. We therefore affirm the judgment of the trial court.
*694 KLEIN, J., concurs.
HAZOURI, J., concurs specially.
HAZOURI, J., concurring specially.
I agree with the result because the facts do not support that the appellees' actions meet the substantial certainty test. However, I do not agree that an employee must prove that the employer intentionally prevented the employee from learning and appreciating the risk involved specifically known by the employer. Turner does not require concealment of the risk. If concealment were necessary, then an employer could expose an employee to the most extreme of hazardous circumstances and escape tort liability so long as the hazard was not concealed.
NOTES
[1] In 2003, the Florida Legislature effectively overruled Turner when it amended section 440.11 to codify the intentional tort exception recognized by Turner by mandating that the plaintiff/employee prove the intentional tort exception by clear and convincing evidence. Moreover, it changed the substance of the exception by replacing the "substantial certainty" standard with the "virtually certain" standard and required that "the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee." See § 440.11(1)(b), Fla. Stat. (2003); see also Feraci v. Grundy Marine Constr. Co., 315 F.Supp.2d 1197, 1205 n. 11 (N.D.Fla.2004). However, for purposes of this appeal, because the incident occurred in 2000, the test set forth in Turner requiring "substantial certainty" is the proper standard to apply.
[2] In fact, if no one could go in the limited access area, then it would be equally improper for the crew sent to brace the wall from going in to do their work. The deposition testimony indicated that there was no way to brace the wall while the scaffolding was in place. No contrary evidence of a more safe practice or procedure was offered.