WELLS, J.
 

 Caridad Cabrera, as personal representative of the Estate of Victor Acosta, appeals from a final summary judgment determining that T.J. Pavement Corp., Acosta’s employer, is entitled to workers’ compensation immunity. Because Cabrera demonstrated the existence of genuine issues of material fact that would except T.J. Pavement’s conduct from workers’ compensation immunity, we reverse.
 

 Acosta was killed when the eight foot deep trench in which he was working collapsed while he was installing drainage pipe for T.J. Pavement at the Green Briar Acres Drainage Improvement Project. At the time of this incident, T.J. Pavement had already installed — without incident— 6,400 of the 8,000 feet of drainage pipe that it had contracted to install at the Green Briar site. Although trench protection boxes were available for use by T.J. Pavement employees working on this project, none had been used and none was in use in the trench in which Acosta died. The trench in which Acosta died had been dug about an hour before it collapsed. It had been dug with 90 degree sides in unstable layered soil, rock, and fill, and had about a foot to a foot and a half of water accumulated at its bottom at the time of its collapse.
 

 In June of 2004, Acosta’s estate filed a wrongful death action against T.J. Pavement primarily claiming that T.J. Pavement’s conduct “exhibited a deliberate intent to deliver or engage in conduct which was virtually and/or substantially certain to result in injury or death.” This claim was supported, in significant part, by citations issued by the Occupational and Safety and Health Administration (OSHA) finding that T.J. Pavement had violated regulations governing trenching
 
 [1]
 
 and testimony to the effect that T.J. Pavement’s conduct was criminal.
 
 [2]
 
 T.J. Pavement moved for summary judgment claiming
 
 *998
 
 workers’ compensation immunity primarily because approximately 80% of this job had been completed without incident before Acosta’s death; no evidence existed that T.J. Pavement had previously experienced a trench collapse; and, Miami-Dade County inspectors, who were at the site daily, had never requested that trench boxes be used. This motion was denied because the trial court found that disputed issues of material fact existed.
 

 A little over five months later, T.J. Pavement, relying on
 
 Pendergrass v. R.D. Michaels, Inc.,
 
 936 So.2d 684 (Fla. 4th DCA 2006), filed a motion for partial summary judgment on the ground that the criminal acts exception to the workers’ compensation laws did not apply to this corporate defendant.
 
 See
 
 § 440.11(1) Fla. Stat. (2002) (excepting from immunity two groups of individuals immunized by section 440.11(1) along with employers: (1) fellow employees who act “with willful or wanton disregard or unprovoked physical aggression or with gross negligence;” and, (2) sole proprietors, partners, officers, directors, and managing agents whose acts constitute a violation of law carrying a jail term of sixty days or longer).
 

 Some five days later, T.J. Pavement filed an “Amended Motion for Reconsideration and/or Renewed Motion for Summary Judgment,” reiterating its argument regarding the criminal acts exception and adding an argument that
 
 Pendergrass
 
 was “directly on point and controlling” and held the OSHA violations are insufficient “as a matter of law” to establish that T.J. Pavement had “exhibited a deliberate intent to injure or engage[ ] in conduct which is substantially certain to result in injury or death.” This time the motion was granted and judgment in T.J. Pavement’s favor was entered.
 

 While we agree with T.J. Pavement that the criminal acts exception has no application to this case, we do not agree that the
 
 Pendergrass
 
 court’s conclusion that the OSHA violations at issue in that case would not support application of the intentional tort exception is dispositive here.
 

 Florida’s workers’ compensation act sets forth a comprehensive scheme that provides benefits to workers injured during employment.
 
 See Bakerman v. Bombay Co.,
 
 961 So.2d 259, 261-62 (Fla.2007). This system, which is based on mutual renunciation of common law rights and defenses by employers and employees, ensures that injured employees who fall within its scope receive swift compensation and medical benefits from the employer irrespective of fault or cause of injury.
 
 Id.
 
 at 261. In exchange, employers who comply with the workers’ compensation act receive immunity from suit except in limited circumstances.
 
 Id.
 
 at 262.
 

 One such exception from workers’ compensation immunity, as T.J. Pavement correctly argues, is the criminal acts exception recognized in section 440.11(1) of the Florida Statutes. § 440.11(1), Fla. Stat. (2002).
 
 [3]
 
 This exception from immunity does not, as
 
 Pendergrass
 
 confirms, apply to corporate defendants such as T.J. Pavement:
 

 Based upon the clear and unambiguous language of the statute, the criminal acts exception does not apply to ... corporate defendants.
 

 Pendergrass,
 
 936 So.2d at 689.
 

 Another exception from workers’ compensation immunity is the intentional tort exception which comes into play when the employer exhibits either “a deliberate intent to injure or engage[s] in conduct
 
 *999
 
 which is substantially certain to result in injury.”
 
 Bakerman,
 
 961 So.2d at 262. There is no evidence that T.J. Pavement intended to injure or kill Acosta. Indeed, the individual with whom Acosta was working, and who dug the trench, was Acosta’s life-long Mend. Thus the issue here, as it was in
 
 Pendergrass,
 
 is whether T.J. Pavement’s conduct was substantially certain to result in his injury or death.
 
 [4]
 
 This determination requires application of an objective analysis to decide whether the employer either knew or should have known that its conduct was substantially certain to result in injury or death.
 
 Bakerman,
 
 961 So.2d at 262 (quoting
 
 Turner v. PCR, Inc.,
 
 754 So.2d 683, 691 (Fla.2000));
 
 Sierra v. Associated Marine Insts., Inc.,
 
 850 So.2d 582, 587 (Fla. 2d DCA 2003) (quoting
 
 Turner,
 
 754 So.2d at 688-89).
 

 In
 
 Pendergrass,
 
 the court applied this objective analysis test and determined that a contractor and its mason subcontractor were not excepted from workers’ compensation immunity based on their conduct in failing to brace a newly-constructed concrete block wall which collapsed killing an unskilled worker who was in a restricted access area preparing the site for installation of new bracing. This determination turned not on whether the failure to follow OSHA guidelines constitutes an intentional tort
 
 [5]
 
 — which, as the court confirmed, it does not — but on the conclusion that where the employee had failed to demonstrate either prior warning or knowledge of similar incidents or concealment of a known danger, and the employee’s sole expert had characterized the employers’ conduct as merely “negligent,” on the facts presented, the substantial certainty test had not been met.
 
 See Pendergrass,
 
 936 So.2d at 691, 693.
 

 Here, as in
 
 Pendergrass,
 
 our task is to determine whether, if true, the facts as alleged were insufficient to establish that the employer’s conduct was substantially certain to result in injury to an employee. One of those facts was that OSHA issued citations faulting T.J. Pavement for failing to follow OSHA guidelines. Additionally, Cabrera alleged that T.J. Pavement knew or should have known that it was fundamentally unsafe to permit Acosta to work in a trench greater than five feet in depth without trench protection, that Acosta and his co-workers were not properly trained, that soil conditions existed at the site which made collapse of the trench highly likely,
 
 [6]
 
 and that several experts
 
 *1000
 
 concluded that T.J. Pavement’s actions were substantially certain to result in injury to an employee. If proved, the facts alleged could convince a jury that when Acosta was sent to work in the trench his employer should have known there was a substantial certainty that doing so would result in his injury or death. Therefore, the circuit court should not have dismissed the action based on workers’ compensation immunity.
 
 See Sierra,
 
 850 So.2d at 589.
 

 While digging a hole in the ground appears to be simple work mandating no particular thought, training or skill, the danger inherent in trench work is so great that in 1990 the Florida legislature adopted the Trench Safety Act to govern this work.
 
 See
 
 §§ 553.60-64, Fla. Stat. (2007). This Act expressly requires all contract bids for excavating trenches exceeding five feet in depth to refer to the trench safety standards that will be in effect during the work; to state in writing that the contractor performing the work “will comply with the applicable trench safety standards;” and to identify “the cost of compliance with the applicable trench safety standards.” § 553.63(l)(e), Fla. Stat. (2007).
 

 The Act also adopts the excavation safety standards promulgated by OSHA as this state’s excavation standards and requires contractors performing trench excavations in excess of five feet deep to comply with applicable OSHA excavation safety standards.
 
 See
 
 § 553.62, Fla. Stat. (2007); § 553.63(2)(a), Fla. Stat. (2007); 8 Fla. Prac., Constr. § 3:8 (2008-2009 ed.).
 

 Here, Cabrera submitted the affidavit of a licensed general contractor who identified both the safety precautions that Florida law and OSHA required for the work being performed by T.J. Pavement and which of those safety precautions T.J. Pavement failed to perform.
 
 [7]
 
 Specifically, the contractor found that T.J. Pavement did not train its employees to recognize and avoid the hazards associated with trenching or the standards applicable to this job as required by Florida law and OSHA standards and that T.J. Pavement had no written safety and health program or safety training program.
 
 [8]
 
 The contractor additionally testified that T.J. Pavement allowed water to remain in the trench which affected soil cohesion, and that T.J. Pavement’s principal was not present on the job site when the trench was dug to assure that proper safety precautions were implemented as conditions changed.
 

 There was also expert testimony that when deciding which safety precautions to employ during a trench excavation, determining soil type is critical. While there was some dispute as to exactly how to classify the soil at the excavation site where Acosta was killed, thereby determining the employer’s concomitant safeguarding responsibilities, the evidence was that neither T.J. Pavement’s principal nor its foreman were even aware of OSHA soil
 
 *1001
 
 type classifications and the precautionary measures mandated by each.
 

 There also was testimony that the vertical walls of the trench in which Acosta was killed were at a “high-risk angle” for the type of soil at the excavation site. The testimony was that the soil at the excavation site was composed of layers of different materials with fissures in it and that these layers and fissures were observable before the trench collapsed and that T.J. Pavement should have tested the soil on-site and either sloped the trench or used trench protection because of that soil composition. And although T.J. Pavement’s principal conceded that a trench box should be used for protection in excavations that are not rock, he admitted that T.J. Pavement never used any cave-in protection on this job.
 

 Also, testimony established that the trench crossed an intersection with “considerable vehicular traffic” which caused mechanical vibrations that also played a part in determining whether precautionary measures should have been taken. Finally, contrary to the expert in
 
 Pendergrass
 
 who observed negligence, Cabrera’s two experts concluded that conditions were such in this case that injury or death was a substantial certainty.
 

 Applying the objective standard, we find that genuine issues of material fact exist, and although Cabrera carries the ultimate burden of demonstrating to a jury that T.J. Pavement engaged in conduct that was substantially certain to result in injury, on this record, summary judgment should not have been granted.
 

 Accordingly, the order under review is reversed.
 

 [1]
 

 . OSHA’s investigation of this incident resulted in issuance of a citation for four safety violations, which it deemed "serious”: (1) failure to instruct employees on applicable safety regulations and how to recognize and avoid unsafe conditions in violation of 29 C.F.R. § 1926.21(b)(2); (2) ordering employees to work in an excavation in which water was accumulating without taking adequate precautions in violation of 29 C.F.R. § 1926.651(h)(1); (3) failure to conduct daily excavation site inspections by properly trained personnel in violation of 29 C.F.R. § 1926.65 l(k)(l); and, (4) failure to provide adequate cave-in protection in violation of 29 C.F.R. § 1926.652(a)(1).
 

 [2]
 

 . This testimony came from the affidavit of a former federal prosecutor who averred that sufficient probable cause existed to support criminal charges for manslaughter, culpable negligence, and willful OSHA violations.
 

 [3]
 

 . We cite to and apply this version of the workers’ compensation law because it was in effect at the time of Acosta’s death.
 
 See Bakerman,
 
 961 So.2d at 262 n. 3.
 

 [4]
 

 .We employ the "substantial certainty” standard because Acosta was killed in July 2003 before section 440.11 of the Florida Statutes was amended to replace the substantial certainty standard with the virtually certain standard, and because this amendment does not apply retroactively.
 
 See
 
 § 440.1 l(l)(b), Fla. Stat. (2002) (providing for a virtual certainty test to be applied to the intentional tort exception to workers’ compensation immunity which must be established by clear and convincing evidence that "the employer engaged in conduct that the employer knew, based on prior similar accidents or on explicit warnings specifically identifying a known danger, was virtually certain to result in injury or death to the employee”);
 
 Bakerman,
 
 961 So.2d at 262 n. 3 (confirming that the new standard does not apply retroactively).
 

 [5]
 

 . Following Pendergrass’ death, OSHA cited the contractor for failing to establish a limited access zone around the masonry wall and for failure to adequately brace masonry walls over eight feet high to prevent collapse. OSHA also issued violations to the mason subcontractor for failure to have a safety program for its employees, failure to instruct each employee in recognizing and avoiding unsafe conditions, failing to establish a limited access zone around the masonry wall, and failing to adequately brace masonry walls over eight feet high.
 

 [6]
 

 . Considering existing conditions, one of Cabrera's experts estimated the likelihood of a collapse at 90% to 95%, the other estimated the likelihood at 85% to 90%.
 

 [7]
 

 . Appellees assert that reversal based in part on violation of the Florida Trench Act amounts to a holding that violation of the Act is per se, an intentional tort. We disagree. We do not see our resolution of the instant case as establishing or observing any such per se rule. Rather, we are concluding that the evidence presented herein, including the undisputed violations of the Act, was sufficient to present material issues of fact.
 

 [8]
 

 . Unlike the general training and warnings to be alert for falling objects while working at a construction site, which were found to be adequate in
 
 Pendergrass,
 
 the dangers inherent in working in a trench less than five feet deep as opposed to working in one six, seven or eight feet deep, or in a trench dug in soft soils, or with vertical walls or water intrusion are not so readily apparent.