On Remand from the Supreme Court of Florida

COPE, J.
This case is before us on remand from the Supreme Court of Florida. The question is whether the defendant-appellee Siemens Energy and Automation, Inc., is entitled to workers’ compensation immunity. The trial court granted summary judgment for the employer on that issue. We conclude that there are disputed issues of material fact and remand for further proceedings.
I.
Plaintiff-appellant Rodolfo Casas was a machine set-up operator for the operation of a mechanical punch press machine which stamped metal lids. His duties included setting up the machine for operation and actually operating it.
The plaintiff had been instructed that if a metal lid became stuck in the machine, the plaintiff should remove it with a long metal rod or with a long screwdriver. While attempting to clear a stuck metal lid, the machine cycled and crushed the plaintiffs arm.
The plaintiff sued the defendant employer. The defendant claimed workers’ compensation immunity. The plaintiff countered by invoking the intentional tort exception to workers’ compensation immunity. Under that exception, “in order to prove an intentional tort, the employer *296 must be shown to have either ‘exhibite[d] a deliberate intent to injure or engage[d] in conduct which is substantially certain to result in injury or death.’ ” Turner v. PCR, 754 So.2d 683, 687 (Fla.2000) (citation omitted).[1]
The defendant moved for summary judgment, arguing that the circumstances of the case did not fall within the intentional tort exception to workers’ compensation immunity. The trial court agreed with the defendant and entered summary judgment.
On appeal, a divided panel affirmed. Casas v. Siemens Energy & Automation, Inc., 927 So.2d 922 (Fla. 3d DCA 2006) (“Casas I”). The majority opinion relied in part on The Bombay Company v. Bakerman, 891 So.2d 555 (Fla. 3d DCA 2004) (“Bakerman /”), which was subsequently quashed by the Florida Supreme Court. Bakerman v. The Bombay Company, Inc., 961 So.2d 259 (Fla.2007) (“Bakerman II”).
The Supreme Court thereafter quashed this court’s opinion in Casas and remanded to this court “for reconsideration upon application of this Court’s decision in Baker-man II.” Casas v. Siemens Energy & Automation, Inc., 969 So.2d 356 (Fla.2007) (“Casas II”).
III.
The present case is similar to Lawton v. Alpine Engineered Products, Inc., 498 So.2d 879 (Fla.1986), as modified by Turner, 754 So.2d at 691 n. 8 (Fla.2000). The Lawton facts were:
Alpine Engineered Products purchased a punch press from Federal Press Company in 1972. In 1981 Carl Lawton, a punch press operator employed by Alpine, caught his hand in the press when a co-worker accidentally put the press into operation as Lawton attempted to adjust the machine. The press crushed Lawton’s hand and caused the loss of all the fingers on that hand. Following the accident, Lawton applied for and received workers’ compensation benefits from Alpine’s insurance carrier and filed suit against Federal Press Company. During the course of discovery, Lawton learned that between February 1972 and August 1980 Alpine had received numerous written communications from Federal Press informing Alpine that, for safety reasons, point of operation guards should be provided on the press and that operators should be instructed about the various dangers involved in operating the press.
498 So.2d at 880 (emphasis added). The Florida Supreme Court has stated that the foregoing facts were sufficient to support an allegation of substantial certainty of injury. Turner, 754 So.2d at 691 n. 8.
In the present case, the defendant’s plant manager, John Samilian, testified that the plaintiff was given extensive training on how to operate the press at issue here, Machine 409. Deposition of John Samilian (“Samilian Deposition”), Oct. 15, 2002, at 122. Machine 409 had a Plexiglas guard which was designed to prevent an operator from placing his hand in the working area of the machine.[2] According *297 to the manager, the plaintiff was instructed to clear a jam by using a metal rod which could be inserted in a small opening in the Plexiglas guard. If that was not successful in clearing the jam, then the operator was to turn off the electrical power and insert a metal dowel which would prevent the press from descending. When that had been done, it was permissible for the operator to bypass the Plexiglas guard and clear the jam by hand. The defense claims that the plaintiff received one-on-one, on the job training with an experienced press operator before he was allowed to operate Machine 409 by himself.
We are obligated to read the record in the light most favorable to the plaintiff as the nonmoving party. See St. Joe Corp. v. McIver, 875 So.2d 375, 377 (Fla.2004). The plaintiff in this case denied that he had received extensive training on this machine prior to beginning to operate it. Deposition of Rodolfo Casas (“Plaintiffs Deposition”), Dec. 12, 2002, at 20-23. He stated that he had short intervals of training by a coworker. Id. He began operating the machine by himself “[pjractically since the first day.” Id. at 23. He was given no written materials, id., and simply received on the job training. While the plant manager testified about the company’s training procedures, the plant manager acknowledged that training was handled by the supervisors and group leaders and was not handled by the manager personally. Samilian Deposition at 127. For present purposes, we accept the plaintiffs version of the facts.
On the day of the accident, the Plexiglas guard was not on the machine. Under the defendant’s procedures, a set-up operator like the plaintiff was allowed to remove the Plexiglas guard. The defendant maintains that the plaintiff removed the Plexiglas guard himself, while the plaintiff apparently denies this. See R. 977.[3] It is, however, immaterial who removed the Plexiglas guard.
The plaintiff testified that he had been told it was unnecessary to turn the power off before reaching into the machine to clear a jam. The plaintiff testified in part:
Q. Well, is there a way to completely shut the machine down either by turning off the electricity or turning off an on or off switch or unplugging it?
A. Yes, there is a switch that you would turn everything off completely.
Q. Where is that switch located?
A. At one side of the machine.
Q. Don’t you think it would be good, common sense to turn that switch off and turn the machine off if something got stuck in the machine and you have to fix it?
A. Yes.
Q. Did you ever do that?
A. No, because a supervisor would say that it was not necessary to turn off the machine.
Plaintiffs Deposition at 38-39 (emphasis added).
Again:
Q. But you certainly knew from common sense before this accident that you should never put your hands in the zone of danger under the ramp?
A. Supposedly, if I am not touching the controls, the machine has no reason to go down or up.
Id. at 55. The plaintiffs understanding was: “Well, supposedly if one is not using the controls, the machine remains off.” Id. at 37.
*298 In the Lawton ease, the press did not have point of operation guards, and the operators had not been instructed on the various dangers involved in operating the press. 498 So.2d at 880. The situation is similar here. Machine 409 had a Plexiglas guard, but it had been removed. The real problem here is that by the plaintiffs account, the supervisor had told him that it was permissible to leave the electrical power on while clearing a jam. The plaintiff had the impression that it would be impossible for the machine to cycle so long as he stayed away from the controls.
At the time of the accident, the plaintiff was operating the machine using the foot controls rather than the hand controls. The plaintiff denied that he stepped on the foot controls and testified that the machine inexplicably cycled when he dislodged a stuck metal part by reaching into the machine using a foot-long screwdriver. The machine descended and caught his hand in the press. The plaintiff testified that there had been electrical problems with the machine and believed that was the cause of the accident. The defendant tested the machine after the accident and reported that the machine controls were operating normally.
At the summary judgment hearing plaintiffs counsel said it appeared the plaintiff had become distracted while attempting to clear the jam and inadvertently stepped on the foot pedal. Because of the concession at the summary judgment hearing below, we accept the proposition that the plaintiff inadvertently stepped on the foot pedal. In reality, the plaintiff denies this. Under either state of facts, reversal is required.
The point of requiring safety devices and proper training is to prevent inadvertent injury while operating dangerous equipment. It is obvious that the press involved in this case presents the opportunity for serious injury, whether through distraction, fatigue, or operator error. Plant manager Samilian testified in deposition that it is expected that employees on a production case will make mistakes.
Safety devices are required precisely because human beings are fallible. As the defendant’s corporate director of safety testified in deposition, with these machines there are no second chances. Deposition of Walter Hazelwood, Feb. 19, 2003, at 110.
The defendant may have had an excellent training program on paper, but the plaintiffs testimony — which we must accept as true for present purposes — was that the reality fell far short of what was described in the defendant’s depositions. The plaintiffs testimony was that he had been taught that it was safe to clear a jam by extending one’s hand into the working area of the machine without turning off the power. Accepting that testimony as true, the plaintiff had been misled about the risk. That testimony would, if believed by the jury, satisfy the substantial certainty test. See Turner, 754 So.2d at 691 n. 8; Lawton, 498 So.2d at 880.
In finding the substantial certainty test to be met, the Lawton decision cited an absence of safety equipment and lack of training about the dangers in operating the press. 498 So.2d at 880, as modified by Turner, 754 So.2d at 691 n. 8. At oral argument, the defendant contended that Lawton establishes an either-or test: the employer may choose either to provide safety devices or training, but is not required to provide both. The defendant maintains that it provided training and therefore did not have to provide safety devices. We reject that reading of Law-ton. Clearly, Lawton contemplated that the employer would supply appropriate safety devices, training in the use of those *299 devices, and training in the operation of the equipment.
IV.
We next consider, pursuant to the remand instructions, the effect of Bakerman II.
In Casas I, the majority based its affir-mance partially on Bakerman I. The Casas I panel said that cases finding the substantial certainty test to be met “contain ‘a common thread of evidence that the employer tried to cover up the danger [to its employees], affording the employees no means to make a reasonable decision as to their actions.’ ” 927 So.2d at 925. The panel went on to say that in the present case, “[t]he element of cover up, deception or concealment of a known danger ... is missing....” Id. at 927.
The Bakerman I decision had ruled that concealment was a required element where the plaintiff wished to show that an employer had engaged in conduct which was substantially certain to cause injury or death. 891 So.2d at 557. In Bakerman II, the Florida Supreme Court reversed on that issue and ruled that concealment is not an essential factor in the substantial certainty test. 961 So.2d at 264. Instead, “concealment of the dangerous condition is only one of several factors in a nonexclusive list.” Id.
The decision in Bakerman II removes one of the bases on which the Casas I panel had affirmed the summary judgment. To the extent that concealment remains one factor to be considered, the plaintiff maintains that there is an element of concealment here, namely, the plaintiff says he had been taught it was safe to clear a jam by extending one’s hand into the working area of the machine without turning off the power.
IV.
For the stated reasons, there are disputed issues of material fact regarding whether the substantial certainty test was met. We reverse the summary judgment and remand the case for further proceedings consistent herewith.
RAMIREZ, J., concurs.

. The Turner decision has been superseded by a 2003 legislative amendment, see Pendergrass v. R.D. Michaels, Inc., 936 So.2d 684, 689-90 n. 1 (Fla. 4th DCA 2006), but the amendment does not apply retroactively. Cabrera v. T.J. Pavement, Corp., 2 So.3d 996, 999 n. 4, 2008 WL 4922600 (Fla. 3d DCA Nov. 19, 2008); FCCI Ins. Co. v. Home, 890 So.2d 1141, 1143-44 (Fla. 5th DCA 2004).

. The witnesses disagreed about the number and configuration of guards for the machine. The machine had been manufactured in the 1960s and at some subsequent time a guard or guards were made for the machine.

. This question was not covered in the Plaintiff's Deposition. At the summary judgment hearing, the plaintiff's counsel stated that the plaintiff denied removing the guard. R. 977.